IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2005

## DARRELL CARTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 04-CR-234   James Edward Beckner, Judge**

———————————

**No. E2005-00322-CCA-R3-PC - Filed November 2, 2005**

———————————

The petitioner, Darrell Carter, pled guilty to five counts of aggravated sexual battery. As a result, he was sentenced to an effective sentence of twenty-one years in the Tennessee Department of Correction to be served at one hundred percent. The petitioner subsequently sought post-conviction relief on the basis of ineffective assistance of counsel and an alleged unknowing and involuntary guilty plea. The post-conviction court denied the petition. For the following reasons, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and ALAN E. GLENN, JJ., joined.

Brent Hensley, Greeneville, Tennessee, for the appellant, Darrell Carter.

Paul G. Summers, Attorney General and Reporter; Brian C. Johnson, Assistant Attorney General; and C. Berkeley Bell, District Attorney General; and Eric D. Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In May of 2003, the petitioner was indicted with five counts of aggravated sexual battery and one count of solicitation of aggravated sexual battery. The indictments alleged that the petitioner intentionally fondled his niece and another child, both less than thirteen years of age. The incidents occurred several times over multiple years. Counsel was appointed for the petitioner and, after several months of negotiations, the petitioner pled guilty to five counts of aggravated sexual battery on September 19, 2003. As a result of the plea agreement, the petitioner received a nine-year sentence for count one, to be served consecutively to a twelve-year sentence in count two, which was ordered to be served concurrently to counts three through five; a twelve-year sentence in count three,

to be served concurrently with counts two, four, and five; a twelve-year sentence in count four, to be served concurrently to counts two, three, and five; and a twelve-year sentence in count five to be served consecutively to count one and concurrently to counts two through four, for a total effective sentence of twenty-one years. Counts one through four were ordered to be served at one hundred percent and classified as violent offenses. Count five was ordered to be served at thirty percent because there was some confusion at the plea hearing as to the actual date of the offense and whether it occurred prior to a statutory change in 1995 that mandated that sentences for aggravated sexual battery be served at one hundred percent.

Subsequently, the petitioner filed a pro se petition for post-conviction relief alleging that he received ineffective assistance of counsel and that he entered his guilty plea involuntarily. Counsel was appointed and an amended petition was filed.

Evidence at the Post-Conviction Hearing

At the post-conviction hearing, the post-conviction court heard testimony from trial counsel and the petitioner. Trial counsel testified that he was appointed to represent the petitioner in May of 2003 and that he met with the petitioner on at least four or five occasions prior to the guilty plea hearing. According to trial counsel, each meeting lasted approximately one to two hours. At the time of the guilty plea, trial counsel had been an assistant public defender for fourteen years and had been licensed to practice law for fifteen years. Trial counsel testified that he had handled "at least" ten cases like the petitioner's in the past.

Trial counsel stated that the State came forward with an original offer of a fifty-year sentence. Trial counsel communicated this offer to the petitioner and informed him that it was merely the "beginning" of the negotiations. Trial counsel and the State negotiated back and forth, until they arrived at an agreed-upon twenty-one-year sentence. During the negotiations, trial counsel was busy receiving discovery, filing motions, and investigating the petitioner's case in preparation for trial. Trial counsel met with the lead police officer on the case as well as the mother of one of the victims. Trial counsel also reviewed the doctor's reports of the medical evaluations of both victims. Trial counsel admitted that although the petitioner's wife provided a statement to the prosecution, he did not speak with her in preparation of the case.

At one point, trial counsel sought and was granted a mental evaluation for the petitioner, but had "no concerns about [the petitioner's] competency." Trial counsel claimed that he asked for the evaluation because of the petitioner's "history of treatment for psychological disorders" and due to the "seriousness" of the case.

Throughout the negotiation process, trial counsel stated that he explained the options to the petitioner and felt that "[the petitioner] understood the nature of the trial, the information that was available to the State, and he was fully aware of how the plea negotiations were going." Trial counsel did not think that the petitioner would be successful at trial and felt that a plea offer was the

best avenue to take in light of the overwhelming evidence against the petitioner, which included a signed confession.

Prior to the plea hearing, trial counsel testified that he explained the plea offer to the petitioner and that the petitioner understood the manner of service of the sentence. Trial counsel stated that he filed a bill of particulars in order to learn the exact dates of the alleged incidents, but that he did not actually receive a response to the bill of particulars prior to the plea hearing. Trial counsel explained that, at the plea hearing, it was unclear whether the incident in count five occurred prior to July 1995, the date that Tennessee Code Annotated section 40-35-120 was amended to require service of one hundred percent of a sentence for a conviction for aggravated sexual battery. As a result, a bench conference occurred in which the plea agreement was amended to reflect a thirty percent release eligibility date for the offense in count five due to the uncertainty of the date of the offense. Trial counsel explained that the amendment to the agreement had no effect whatsoever on the petitioner's effective sentence and actually benefitted the petitioner by reducing the release eligibility date for one of his convictions.

The petitioner testified that he filed the petition for post-conviction relief because he felt that the "time" he received in exchange for his guilty plea was "not fair." The petitioner stated that trial counsel told him several times that he could either "take the twenty-one or the sixty-four."[1] The petitioner stated that trial counsel came to see him three to five times and stayed for thirty minutes each time.

The petitioner admitted that trial counsel reviewed the plea agreement with him. The petitioner also acknowledged that he signed the agreement that specified the manner of service of the sentence. However, the petitioner claimed that trial counsel did not discuss the change in the release eligibility of count five that occurred during the bench conference at the plea hearing. The petitioner later admitted that trial counsel explained to him that as a result of the bench conference, one of the charges was going to carry a lesser percentage range. The petitioner claimed that he would not have pled guilty had he known that the release eligibility on count five was changed.

At the conclusion of the hearing, the post-conviction court denied the petition for post-conviction relief, making the following findings of fact and conclusions of law:

> The grounds for post-conviction relief alleged are, one, that the plea was not voluntary; number two, that he was denied effective assistance of counsel; number three, that there was newly discovered evidence which should overturn the plea; number four, that his confession was coerced; and number five, the state failed to disclose exculpatory evidence to him.

---

[1] Sixty-four years was the maximum sentence that the petitioner faced if convicted of all of the charged offenses.

The presentence report that has been filed as an exhibit in this case shows that the petitioner had a long history with criminal proceedings and criminal courts, and even a 1990 sexual abuse of a child for which he received counseling; so he was familiar with court proceedings.

[Trial counsel], assistant public defender, represented the petitioner in the preparation for trial of the case and the entering of the plea of guilty. [Trial counsel] has been an assistant public defender for 14 years prior to the time he represented the petitioner. [Trial counsel] had handled many, many serious felony cases in this court. He was and is a very experienced criminal defense lawyer.

In this particular case he obtained discovery to be obtained. He filed all possible motions on all possible issues. He did thoroughly investigate the case. He had plea negotiations with the state and discussed them at length with the petitioner.

The evidence against the petitioner was great. Not only was there a confession and a statement to his wife which was inculpatory but also there were victims who would have been able to testify what the petitioner did to them.

In addition to that, in [trial counsel's] discussion with the petitioner, the petitioner admitted that he had done these things and that he was guilty, and he repeated that today. At times he said one thing or another but generally his testimony was today that he was guilty, he had done those things for which he was charged.

[Trial counsel], because of some history of mental problems with the petitioner and because the petitioner told him of problems he was having, had him evaluated; and the report from the mental health agency that evaluated him was that he was sane at the time of the commission of the offenses and that he was competent to stand trial. In fact, he was profiled as a pedophile. There was [sic] really no competency problems that could validly be raised to the Court or in the preparation for trial.

[Trial counsel] was in fact prepared to go to trial in this case when he received an offer from the state. The first offer was 50 years. He managed after much discussion to get the offer down to 23 years. The petitioner agreed to accept the 23 years, and then [trial cousel] was able to get it down to 21 years just before the plea was entered. The petitioner could've gotten 60 years, plus, had he gone to trial. These are cases that can under the law be imposed consecutively if convicted. . . .

Further, the defendant did have some criminal record that would have justified enhancement of punishment above the presumptive minimum sentence.

So, [trial counsel], in fact, did obtain a good result for the petitioner.

The allocution shows the voluntariness of the plea. Then and now, the petitioner testifies and answers and asks questions himself in a very articulate manner. It was clear then and it's clear now that he easily understands what he's being asked and what he says, what he's being told.

In the allocution, which covers 17 pages of the transcript, all his rights were explained to him and he understood them; he said he understood them. He knowingly waived all pretrial issues by entering the plea of guilty, one of which was whether or not a confession was coerced. Although he says the confession was coerced, the only evidence that he introduces today of a coerced confession is that the officers talked rudely to him, and he does say that he asked for an attorney and was told that would make it harder on him. But even if the confession were thrown out by a motion to suppress, it's clear that the evidence would still have sustained convictions in the charges against the petitioner, so it would've made no difference.

The petitioner negotiated, with his counsel, plea negotiations. He agreed to plead guilty of his own volition. It was not something that [trial counsel] forced him to do, and [trial counsel] did not give him only the choice of 64 years or 21 years. [Trial counsel] may [have] very well advised him of the maximum sentence; he thinks that he did but [trial counsel] never testified that he said, you're either going to get 64 years or take the 21. Actually, it was 23 at that time. The truth is that was more likely the case than not, given the nature of the offenses.

The petitioner told this Court on more than one occasion during the allocution, pages 10 and 11, that he understood that he was to receive 21 years with a one hundred percent release eligibility date, and he says that here today, and the guilty plea would have waived all those issues that we tried to correct the indictments, the dates and so forth. And [trial counsel] had filed a motion for a bill of particulars and pursued it but because of the ultimate offer of the state had decided to go ahead with the plea or recommend the plea, and the petitioner had decided to take it. But the court, nevertheless, at the request of the state did put the specific dates as much as possible into the indictments at the end of the plea. Again, I would say that those things would all have been waived by the entry of the plea, but they were done, and the fact that it was decided to put a date into count number five that would've made it have a thirty percent release eligibility date instead of a one hundred percent release eligibility date and then change the consecutive counts to one and two with two different victims to keep the promise and the agreement between the petitioner and the state to 21 years at a hundred percent makes no difference. The petitioner has to serve not one day more because it's counts number one and two being served consecutively rather than counts number one and five. He had agreed to 21 years with a one hundred percent release eligibility date. That was when it was surmised, at least, that number five was within the ability to make it a one hundred

percent release eligibility date rather than a thirty percent release eligibility date. But when the state decided to put specific dates with all the counts, they agreed that count number five was a date that preceded the statute, which would impose a one hundred percent release eligibility date, and that's when it was agreed that counts one and two would be served consecutively rather than counts one and five. No different result, no different result.

The petitioner says that [trial counsel] could have counseled him more, but this Court doesn't understand how that would've made a difference in the results. . . .

There is no newly discovered evidence. There is no showing of any evidence or anything not [in] evidence that the state could have furnished the petitioner that was exculpatory in nature.

The Court can only conclude that [trial counsel] in his representation of the petitioner met all the tests of <u>Baxter vs. Rose</u> and the other cases that define what effective assistance of counsel is. The only different result that could have come from going to trial in this case would have been that the petitioner would have received a greater sentence than he has received.

The Court finds that petitioner did in fact in all respects and aspects of the case receive effective assistance of counsel and that his guilty plea was voluntarily, understandable, intelligently and knowingly entered; and, therefore, the petitioner for post-conviction relief is denied and dismissed with costs to petitioner.

Following the dismissal of the petition for post-conviction relief, the petitioner filed a timely notice of appeal.

Analysis

Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. <u>See</u> Tenn. Code Ann. § 40-30-110(f); <u>Momon v. State</u>, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. <u>See</u> <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. <u>See</u> <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997); <u>Alley v. State</u>, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by

the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

### Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the petitioner argues that trial counsel was ineffective because he failed to "properly investigate the charges and work to develop a viable defense and was thus inadequately prepared to defend the case or to further gain a more favorable plea bargaining position." The petitioner also argues that trial counsel "should not have allowed the State to amend or alter the plea agreement so as to allow Count One and Count Two to run consecutively as opposed to the agreement that [the petitioner] signed indicating that Counts One and Five would run consecutively." Specifically, the petitioner complains that he did not understand the plea agreement as modified and was not made aware of the ramifications of the modification. Further, the petitioner argues that he suffered prejudice by entering into an unknowing and unintelligent guilty plea.

The petitioner claims that trial counsel was ineffective because he failed to effectively investigate the case. Specifically, the petitioner complains that trial counsel failed to interview any witnesses except for the mother of one of the victims. Further, the petitioner claims that trial counsel should not have amended the plea agreement at the plea hearing without first communicating that information to the petitioner. Despite the petitioner's claims, the record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. As stated previously, credibility determinations are entrusted to the trial court. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The post-conviction court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision, including the fact that trial counsel met with the petitioner and discussed not only the discovery materials, but the plea offer and the ramifications of pleading guilty. Trial counsel testified that he felt like the petitioner understood the nature and consequences of the plea, and even admitted that he was guilty of the offenses as charged. Further, trial counsel testified that he filed numerous motions and spent adequate time preparing the case for trial in the event that the plea negotiations were unsuccessful. Moreover, though the release eligibility date was changed from one hundred percent to thirty percent on count five, the petitioner's effective sentence was not altered. The record not only supports the determination of the post-conviction court, but the petitioner has also failed to establish that he suffered any prejudice as a result of trial counsel's representation and failed to show that there was a reasonable probability that but for trial counsel's errors he would not have pleaded guilty and would have gone to trial. This issue is without merit.

## Knowing and Voluntary Guilty Plea

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. 668, 694 (1984), the petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the State standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and

knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The transcript from the plea hearing herein reveals that the trial court carefully and correctly informed the petitioner regarding his constitutional rights, and specifically asked if he understood that he was waiving those rights by pleading guilty. The allocution covers a full seventeen pages of the transcript at the guilty plea hearing. The petitioner responded in the affirmative to the questions as asked by the trial court. Further, he stated that he understood the plea agreement and the significance of the guilty plea hearing, and was entering his guilty plea voluntarily. The petitioner also acknowledged that he was satisfied with counsel's representation. Though the release eligibility date of count five was changed during a bench conference at the plea hearing and count five was ordered to be served consecutively to count one, neither the total length of the petitioner's sentence nor the manner of service of the sentence was altered. Moreover, our Supreme Court has held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997). Accordingly, we determine that the petitioner's guilty plea was knowing and voluntary.

Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE